AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| RONALD BENNETT | ) | Case No. |
| | ) | 3:13mj-111 |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  June 15-17, 2006  in the county of  Greene  in the Southern District of Ohio, the defendant(s) violated:

*Code Section*

1. 18 USC 2422(b)
2. 18 USC 2423(a)

*Offense Description*

1. Coercion and Enticement (of a minor).
2. Transporation of a minor - transportation with intent to engage in criminal sexual activity.

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

FBI SA Andrea R. Kinzig
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 04/01/2013

*Judge's signature*

City and state: Dayton, Ohio

Hon. Sharon L. Ovington
*Printed name and title*

### AFFIDAVIT IN SUPPORT OF
### CRIMINAL COMPLAINT

I, Andrea R. Kinzig, being duly sworn, depose and state as follows:

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and have been so employed since 2005. I am currently assigned to the Dayton, Ohio Resident Agency of the FBI's Cincinnati Field Office. In connection with my official duties, I investigate violations of federal criminal laws, including offenses involving child exploitation and child pornography.
2. Along with other agents of the FBI and Air Force Office of Special Investigations (AFOSI), I am currently involved in an investigation of child exploitation offenses committed by **RONALD BENNETT** (hereinafter referred to as "**BENNETT**"). Based on the investigation conducted to-date, there is probable cause to believe that **BENNETT** committed the following offenses: (1) Coercion and Enticement, in violation of Title 18, United States Code, Sections 2422(b); and (2) Transportation of Minors, in violation of Title 18, United States Code, Section 2423(a). I submit this Affidavit in support of a criminal complaint.
3. As part of the investigation, I have reviewed documentation and reports provided by and discussed information with other agents involved in the investigation. For purposes of this Affidavit, I have not distinguished between information of which I have direct knowledge and that of which I have hearsay knowledge.
4. This Affidavit does not contain every fact known to the investigation, but only those deemed necessary to demonstrate sufficient probable cause that **BENNETT** committed the offenses alleged in the complaint.

### RELEVANT LEGAL STATUTES

5. Title 18, United States Code, Section 2422(b) – Coercion and Enticement – states that it is a violation for any person to use the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, to knowingly persuade, induce, entice, or coerce any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempt to do so.
6. Title 18, United States Code, Section 2423(a) – Transportation of Minors – states that it is a violation for any person to knowingly transport an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory, or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense.
7. Ohio Revised Code Section 2907.03(A)(9) – Sexual Battery – states that it is a violation for any person to engage in sexual conduct with another, not the spouse of the offender, when any of the following apply: . . . (9) The other person is a minor, and the offender is the other person's athletic or other type of coach, is the other person's instructor, is the leader of a scouting troop of

1

which the other person is a member, or is a person with temporary or occasional disciplinary control over the other person.

8. Ohio Revised Code Section 2907.04(A) – Unlawful Sexual Conduct with a Minor – states that it is a violation for any person who is eighteen years of age or older to engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.
9. Ohio Revised Code Section 2907.06(A)(4) – Sexual Imposition – states that it is a violation for any person to have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more persons to have sexual contact when any of the following applies: . . . (4) The other person, or one of the other persons, is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of such person, and the offender is at least eighteen years of age and four or more years older than such person.
10. The Ohio Revised Code 2907.01 provides the following definitions with respect to the above noted statutes:
    a. "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.
    b. "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.
    c. "Minor" means a person under the age of eighteen.
11. Louisiana Revised Statute Section 14:43.1(A)(2) – Sexual Battery – states that it is a violation if there is intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim, when any of the following occur: . . . (2) The act is consensual but the other person, who is not the spouse of the offender, has not yet attained fifteen years of age and is at least three years younger than the offender.
12. Louisiana Revised Statute Section 14:81(A)(1) – Indecent Behavior with Juveniles – states that it is a violation if there is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person: (a) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons. Lack of knowledge of the child's age shall not be a defense.
13. Louisiana Revised Statute Section 14:81.2 – Molestation of a Juvenile or a Person with a Physical or Mental Disability – states that it is a violation if there is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two

2

persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.

## FACTS SUPPORTING PROBABLE CAUSE

14. The investigation has determined that **BENNETT** is currently 43 years old and served in the United States Air Force from approximately 1988 to 2010. He was stationed at Osan Air Force Base in Korea from approximately November 1994 to December 1995, Wright Patterson Air Force Base in Ohio from approximately December 1995 to July 2005, and Barksdale Air Force Base in Louisiana from approximately July 2005 to August 2010. **BENNETT** retired from the United States Air Force in 2010 and moved to Massillon, Ohio.
15. In April 2012, an individual who will be referred to for the purposes of this Affidavit as "DR" was contacted by agents of AFOSI. In summary, DR provided the following information to agents:
    a. DR met **BENNETT** around 2005 when DR was approximately 14 years old and living with his family in military housing at Wright Patterson Air Force Base. DR's step-father worked with **BENNETT**, and his family lived in close proximity to **BENNETT**.
    b. On approximately eight to fifteen occasions, **BENNETT** and DR masturbated together at **BENNETT**'s request. The first occasion occurred in a shed near **BENNETT**'s residence. **BENNETT** said that if DR refused to masturbate with him, he would "do something" or "go after" (or words to that effect) DR's younger brother. Other instances occurred at **BENNETT**'s residence, in a vehicle, and at a hotel.
    c. The last occasion DR saw **BENNETT** was around the spring or summer of 2006, when DR was 15 years old. **BENNETT** had been transferred from Wright Patterson Air Force Base but returned to the area to visit. **BENNETT** booked a hotel room and took DR, DR's two brothers (who were approximately seven and sixteen years old at the time), and **BENNETT**'s son to a hotel to go swimming. **BENNETT** called DR's mother on her cellular telephone on the same day or within a few days before and invited DR and the brothers to the hotel. **BENNETT** decided that they would spend the night, and **BENNETT** and DR shared a bed. After everyone else fell asleep, **BENNETT** asked DR to have anal sex with him. DR refused, and they masturbated together instead. **BENNETT** performed oral sex on DR and then DR performed oral sex on **BENNETT** at **BENNETT**'s request.
16. DR's two brothers were also interviewed by AFOSI agents. Both recalled being taken by **BENNETT** to a hotel to go swimming and spend the night. One of the brothers also recalled waking up in the middle of the night and hearing **BENNETT** and DR move around under the covers. However, he noted that the room was dark and that he did not observe any of the sexual acts.
17. Another individual who will be referred to for purposes of this Affidavit as "DW" was contacted by AFOSI agents in July 2012 and January 2013. DW provided the following information to agents:
    a. DW met **BENNETT** around 1999 or 2000 when he was approximately eight to nine years old. DW's family moved into Wright Patterson Air Force Base's housing in close proximity to **BENNETT**'s residence. DW's mother became friends with **BENNETT**'s former wife, and

3

DW became friends with **BENNETT**'s step-daughter. DW came over to **BENNETT**'s house on a regular basis to visit with the step-daughter.
   b. When DW was at **BENNETT**'s residence, **BENNETT** frequently showed pornography to DW and requested DW to masturbate with him. They masturbated with each other on a number of occasions.
   c. On one occasion in 2003 or 2004, when DW was approximately 11 to 12 years old, DW spent the night at **BENNETT**'s residence and fell asleep on the couch. DW woke up to **BENNETT** nudging him, and **BENNETT** asked DW to sleep with him. When they got into **BENNETT**'s bed, **BENNETT** removed all of his clothes and requested DW to do the same. DW refused, but he woke up the next morning to find **BENNETT** lying naked next to him.
   d. During the summer of 2006, after **BENNETT** moved to Barksdale Air Force Base, **BENNETT** invited DW to visit his residence. **BENNETT** told DW that the step-daughter, who was no longer living with **BENNETT**, would be visiting at the time of DW's visit. DW recalled flying to and from Louisiana. This was the only occasion that DW visited **BENNETT**'s home in Louisiana. Among other things, DW recalled the following about the trip:
      i. Upon DW's arrival, **BENNETT** picked DW up from the airport. During the car ride on the way to the house, **BENNETT** played a pornographic movie, removed his clothes, and masturbated. **BENNETT** encouraged DW to do the same, but DW refused.
      ii. When **BENNETT** and DW arrived at the house, DW learned that **BENNETT**'s step-daughter was not there (and did not arrive until the end of DW's trip). A few days later, **BENNETT** again encouraged DW to masturbate, but DW refused. **BENNETT** then said he would do it for DW, reached down DW's shorts, and grabbed DW's penis.
      iii. Also during the trip, **BENNETT** asked if DW would have sexual intercourse and provide oral sex on him. DW refused to engage in these sexual activities.
   e. **BENNETT** attempted to contact DW again in 2009 via telephone and the Facebook social networking site, but DW instructed **BENNETT** not to contact him again.
18. **BENNETT** was interviewed by AFOSI and FBI agents on three occasions as part of the investigation. **BENNETT** provided the following information regarding his interaction with DR during these interviews:
   a. **BENNETT** and DR masturbated with each other at **BENNETT**'s house on Wright Patterson Air Force Base on less than ten occasions. **BENNETT** stated that DR primarily initiated these activities.
   b. During the summer of 2006, when he returned to the Wright Patterson Air Force Base area to visit, **BENNETT** booked a hotel room and took DR, DR's two brothers, and **BENNETT**'s son to the hotel to go swimming and spend the night. **BENNETT** could not recall the name of the hotel but advised that it was off of Colonel Glenn Highway in the Beavercreek, Ohio area. **BENNETT** advised that during the evening hours after the others were asleep, DR requested that he and **BENNETT** masturbate together. This progressed into mutual masturbation where they stroked each other's penises. DR then initiated and performed oral sex on **BENNETT**. **BENNETT** advised that it was possible that he

4

performed oral sex on DR, but he could not specifically recall. **BENNETT** drove DR and the other boys to and from the hotel in his Cadillac Deville.

19. **BENNETT** provided the following information regarding his interaction with DW during his interviews:
    a. **BENNET** masturbated with DW at his house on Wright Patterson Air Force Base on less than 20 occasions and at his house on Barksdale Air Force Base on less than five occasions. **BENNETT** stated that DW primarily initiated these activities, and he denied showing pornography to DW.
    b. On the day following the above noted hotel stay with DR, **BENNETT** picked up DW in his Cadillac Deville and drove DW to **BENNETT**'s house on Barksdale Air Force Base. **BENNETT** stated that the purpose of the trip was for DW to visit his step-daughters, but he acknowledged that the step-daughters did not arrive until later in DW's stay. On one occasion during the stay, DW requested to masturbate with **BENNETT**. **BENNETT** stated that at DW's request, this progressed into mutual masturbation where they stroked each other's penises. **BENNETT** denied reaching down DW's shorts and grabbing DW's penis without DW's consent, as described by DW. Consistent with DW's statement, **BENNETT** stated that this was the only occasion that DW came to Louisiana to visit.
20. Based on both DR's and **BENNETT**'s versions of what transpired at the hotel, I believe that **BENNETT** engaged in sexual activities with DR that constituted felony offenses in Ohio pursuant to the Ohio Revised Code – including Sexual Battery, Unlawful Sexual Conduct with a Minor, and Sexual Imposition. Based on both DW's and **BENNETT**'s versions of what transpired at **BENNETT**'s residence at Barksdale Air Force Base, I believe that **BENNETT** engaged in sexual activities with DW that constituted felony offenses in Louisiana pursuant to the Louisiana Revised Statute – including Sexual Battery, Indecent Behavior with Juveniles, and Molestation of a Juvenile.
21. Records obtained from the Wyndham Hotel Group, which is the parent company of Ramada Worldwide Inc., indicate that **BENNETT** stayed at the Ramada Limited located at 2540 University Boulevard, Fairborn, Ohio, on June 15, 2006. University Boulevard runs directly off of Colonel Glenn Highway. The location and date of this hotel stay is consistent with **BENNETT**'s statement about when and where he took DR and the other boys to go swimming and spend the night. I therefore submit that it is reasonable to believe that the alleged sexual contact between **BENNETT** and DR occurred on or about the late evening hours of June 15, 2006 or early morning hours of June 16, 2006.
22. Records obtained from Wright-Patt Credit Union identified that **BENNETT** had a debit card with this financial institution in 2006. Review of his account statements identified that he utilized his debit card to make purchases in Tennessee and Mississippi on or around June 17, 2006. He then made subsequent purchases in Louisiana later on June 17, 2006 as well as on subsequent days. I know that Tennessee and Mississippi are along the logical driving route between Ohio and Louisiana, and these purchases are consistent with **BENNETT** driving DW from the Wright-Patterson Air Force Base area to his residence in Barksdale Air Force Base. Based on this information and other information noted in the Affidavit, I submit that it is reasonable to believe that **BENNETT** transported DW from Ohio to Louisiana during the approximate time period of June 16, 2006 to June 17, 2006.

5

23. As part of the investigation, **BENNETT** voluntarily provided his laptop computer to investigators and consented for it to be examined. The examiner found a flight itinerary on the laptop identifying that a flight was booked for DW to fly from the Shreveport, Louisiana airport to the Dayton, Ohio airport (with a layover in Atlanta, Georgia) via Delta Airlines on July 8, 2006. Based on this and other information noted in this Affidavit, I believe that the alleged sexual contact between **BENNETT** and DW at **BENNETT**'s residence in Louisiana occurred during the approximate time period of June 16, 2006 to July 8, 2006.
24. Also recovered from **BENNETT**'s laptop were three emails that were sent from the email address SPDSKATE24@HOTMAIL.COM to LILDDUB10@SBCGLOBAL.NET. Based on the content of the email communications, **BENNETT** appears to be the user of the Hotmail email address while DW appears to be the user of the SBC Global email address. These emails included the following:
    a. On April 16, 2006, **BENNETT** forwarded an email to DW that he (**BENNETT**) previously sent on April 7, 2006 to an incorrect email address. In the original email communication, **BENNETT** invited DW to come to his house in Louisiana. The communication included the following: "We all miss seeing you and having you around . . . You just need to come down here, so we can go to Six Flags over Texas (Amusement Park) and other interesting things that there are to do in Louisiana. There's a big Gator park not far from here where they feed the gators 13 year olds....j/k! :) Seriously, we do miss you and hope you have a chance to spend some time with us."
    b. In an email dated July 9, 2006, **BENNETT** talked about DW's trip to Louisiana and DW's return home. The communication included the following: "Really miss you already. It was very nice to have you here in Louisiana, and can't wait until the next time you can visit!"
    c. **BENNETT** referenced DW's trip to Louisiana in an email dated July 29, 2006. This communication included the following: "Man I been wantn 2 send u ur shorts ya kno, but u never sent me address 2 send the package . . . Miss u so much! Hope 2 hear from u soon! Call as soon as u get a chance!"
25. Although DW recalled flying from Ohio to Louisiana, I know, based on my training and experience, that victims of sexual assault – particularly juvenile victims – may confuse some details of what transpired due to the emotional trauma they endured. The passage of time can also create additional confusion. Although DW recalled flying both to and from Louisiana, **BENNETT**'s statement, the credit card records, and the computer itinerary are consistent with **BENNETT** driving DW to Louisiana and DW flying home. I therefore submit that it is reasonable to believe that **BENNETT** drove DW to Louisiana and DW flew home, and that DW confused the car ride from the airport with the car ride from Ohio to Louisiana.
26. Based on **BENNETT**'s history of masturbating with DR, DR's statements about **BENNETT** soliciting him for anal sex at the hotel prior to engaging in the masturbation and oral sex, and other information noted in this Affidavit, I believe that **BENNETT** knowingly persuaded, induced, enticed, and coerced DR to engage in sexual activities for which he could be charged with a criminal offense pursuant to the Ohio Revised Code – that being Sexual Battery, Unlawful Sexual Conduct with a Minor, and Sexual imposition. Furthermore, I believe that **BENNETT** utilized the stay at the Ramada Limited as well as his Cadillac Deville in transporting DR to and from the hotel

6

as means to persuade, induce, entice, and coerce DR. Inasmuch as the Ramada Limited conducts business with interstate travelers and Cadillac Devilles are manufactured outside the states of Ohio and Louisiana, both the hotel and the vehicle represent facilities or means of interstate or foreign commerce.

27. Again based on **BENNETT**'s history of masturbating with DW, DW's statements about **BENNETT** masturbating in the car while in route to **BENNETT**'s house, DW's statements about **BENNETT** grabbing his penis without his consent and later soliciting him for sexual activities, and other information noted in this Affidavit, I believe that **BENNETT** knowingly transported DW from Ohio to Louisiana with the intent of engaging in sexual activities for which he could be charged with a criminal offense pursuant to the Louisiana Revised Statute – that being Sexual Battery, Indecent Behavior with Juveniles, and Molestation of a Juvenile.

## CONCLUSION

28. Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that between on or about June 15, 2006 and June 16, 2006, **RONALD BENNETT** used the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, to knowingly persuade, induce, entice, or coerce an individual who had not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempted to do so, in violation of Title 18, United States Code, Section 2422(b).

29. I further submit that there is probable cause to believe that between on or about June 16, 2006 and June 17, 2006, **RONALD BENNETT** knowingly transported an individual who had not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory, or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, in violation of Title 18, United States Code, Section 2423(a).

30. I therefore respectfully request that a criminal complaint be granted upon this Affidavit.

Andrea R. Kinzig
Special Agent, FBI

Subscribed and sworn to before me
this 1st day of April 2013

Hon. Sharon L. Ovington
United States Magistrate Judge

7